FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUIS...

2015 AUG 11  AM 11: 51

WILLIAM W. BLEVI...
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA



**FELONY**

## BILL OF INFORMATION FOR VIOLATIONS
## OF THE OUTER CONTINENTAL SHELF LANDS ACT AND CLEAN WATER ACT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 15 - 197 |
| v. | * | SECTION: SECT. H  MAG. 4 |
| BLACK ELK ENERGY OFFSHORE | * | VIOLATIONS: 43 U.S.C. § 1350 |
| OPERATIONS, LLC | * | 33 U.S.C. § 1319(c)(1)(A) |
| | | 33 U.S.C. § 1321(b)(3) |

\*      \*      \*

The United States Attorney charges that:

### COUNT 1-OUTER CONTINENTAL SHELF LANDS ACT (OCSLA)

### A. AT ALL TIMES MATERIAL HEREIN

1.      Beginning at a time unknown, but no later than July 1, 2010, and continuing until October 13, 2013, defendant, **Black Elk Energy Offshore Operations, LLC ("BEE"),** owned and operated an oil production facility erected on a federal mineral lease, OCS-00367, in the Gulf of Mexico 20 miles from Port Fourchon at an area designated as West Delta 32 in the territorial jurisdiction of the Eastern District of Louisiana.

2.      **BEE's** production facility at West Delta 32 consisted of three bridged platforms, "A," "D," and "E." **BEE** contracted with Company "A" for individuals to man and conduct operations at the West Delta 32 facility. The crew for West Delta 32 consisted of a Lead operator

___ Fee _____
___ Process _____
_X_ Dktd _____
___ CtRmDep _____
___ Doc. No. _____

also known as a Person-In-Charge ("PIC"), an "A" operator, a "B" operator, a "C" operator, and a Roustabout.

3.     A PIC is responsible for the oversight and safety of the production facility.

4.     Beginning at a time unknown, but no later than on or about September 1, 2012, oil production at West Delta 32 was shut-in, meaning wells associated with **BEE's** West Delta 32 facility were not flowing, due to damage in pipelines that transported **BEE's** oil.

5.     Following the shut-in, **BEE** undertook a number of construction projects on the platforms of the West Delta 32 facility and beginning on or about November 3, 2012, **BEE** initiated construction projects that included replacing the floatcell, also known as the WEMCO, replacing valves on the manifold of the production header, and installing a divert valve on the Lease Automatic Custody Transfer (LACT) unit and tying it into the sump line piping.

6.     The LACT system was the last point in the production process prior to the sale of oil and transmission of oil from West Delta 32 to another facility through pipelines. The LACT system consisted of two pumps that took suction from one of two 400 barrel Dry Oil Tanks on "E" platform. The pumps discharged through the basic sediment and water ("BS&W") meters and then through the oil pipeline pumps to the sales pipeline. **BEE** planned to have the system modified to include a divert valve. The divert valve would redirect flow to the Wet Oil Tank when the BS&W monitor indicated unacceptable contaminants in the crude oil keeping it out of the pipeline for sale until it was processed to an acceptable quality.

7.     In October 2012, **BEE** contracted with an engineering firm to design plans for some of the construction projects including the floatcell replacement. **BEE** hired a Construction Consultant to be physically present at the West Delta 32 facility to inspect and coordinate the construction project.

2

8.     The construction was to be physically completed by crews from Company "B." Beginning at a time unknown, but prior to November 3, 2012, **BEE** contracted with Company "B" for a multiple man construction crew. The Construction Superintendent employed by Company "B" was to be physically present on the facility managing the construction crews which consisted of Company "B" employees and employees from a third-party subcontractor. The sub-contracted employees were from the Philippines.

9.     Beginning on or about November 3, 2012, the Construction Consultant arrived on the West Delta 32 facility. On or about November 6, 2012, the Construction Superintendent and Company "B" crew members arrived on the facility. Every person that went onboard the facility at West Delta 32 was required to complete an orientation form. The orientation form included a provision that stated "Each morning at 6 a.m., the Facility Person-In-Charge will conduct a Safety Meeting. Attendance is mandatory."

10.     All the construction projects on West Delta 32 required hot work, meaning welding, grinding, and/or any other activity that may produce a spark. Hot work on an oil production facility is a hazardous activity which is capable of causing injury or death if done without due care and adherence to safety procedures and regulations.

11.     According to Title 30, Code of Federal Regulations, Section 250.113(a), before welding begins, any equipment containing hydrocarbons must be moved at least 35 feet horizontally from the welding area. Similar equipment on the lower decks must be moved at least 35 feet from the point of impact where slag, sparks, or other burning materials could fall. If moving such equipment is impractical, that equipment must be protected with flame-proofed covers, shielded with metal or fire-resistant guards or curtains, or the flammable substances in the equipment rendered inert.

12. According to Title 30, Code of Federal Regulations, Section 250.113 (c)(1)(i), before welding outside of a designated safe work area begins, written permission from the PIC must be obtained. The written permission is commonly referred to as a "hot work permit."

13. Those persons engaged in the welding activity and the PIC are required to conduct a pre-work inspection for potential fire hazards and explosion hazards in the work area and the areas below it.  30 C.F.R. § 250.113(c)(1)(ii).

14. According to Title 30, Code of Federal Regulations, Section 250.113(c)(2), during welding, the PIC must designate one or more persons as a fire watch. The fire watch must:

(i) Have no other duties while actual welding is in progress;

(ii) Have usable firefighting equipment;

(iii) Remain on duty for 30 minutes after welding activities end; and

(iv) Maintain continuous surveillance with a portable gas detector during the welding and burning operation if welding occurs in an area not equipped with a gas detector.

15. According to Title 30, Code of Federal Regulations, Section 250.113(c)(3), no welding should take place on piping, tanks, containers, or other vessels that have contained a flammable substance unless the contents have been rendered inert and the PIC determines that it is safe to weld.

16. **BEE**, Company "A," and Company "B" had written policies for hot work that tracked the language in the regulations for welding and burning, including a requirement for written permission for hot work, inspection requirements, firewatch designations, and ensuring that piping that had contained  hydrocarbons be rendered inert before welding.

17. On or about November 8, 2012, the PIC for the facility at West Delta 32 was employed by Company "A." He conducted a 6 a.m. safety meeting with all persons on board for

4

a couple of days after his arrival. After a couple days, he stopped conducting the 6 a.m. safety meetings. He issued hot work permits for the construction work on West Delta 32 for two days, November 8, 2012, and November 9, 2012.

18.     Starting on or about November 10, 2012, the PIC stopped issuing the hot work permits. The PIC delegated the responsibility for hot work permitting to the "C" operator, an inexperienced employee of Company "A" who had approximately 7 months experience offshore and had never issued a hot work permit. Upon instruction by the PIC, the operator copied each of the previous days' hot work permits. Areas where hot work was to be performed each day were not inspected by the PIC or Company "A" operators before the "C" operator provided the hot work permits. Neither the PIC nor the "C" operator designated firewatches.

19.     The last day of construction on the West Delta 32 facility was November 16, 2012. That morning Company "B" crews were tasked with completing projects that required hot work to be performed on the cellar deck of "E" platform and on the top deck of "E" platform at the floatcell and at the LACT unit.

20.     After leading the Company "B" 6:00 a.m. safety meeting on November 16, 2012, the Construction Superintendent instructed a crew to begin work to connect the sump line piping to the LACT unit piping so that bad oil coming through the divert valve at the LACT unit could flow to the Wet Oil Tank. The Construction Superintendent was present when the crew made cold cuts to the sump line piping leading to the Wet Oil Tank. Liquid spilled from the piping. The Construction Superintendent observed the spill, but did not stop the work. He left the area and returned to the office located on another platform within the West Delta 32 facility. At approximately 9:00 a.m., when the construction crew at the LACT unit attempted to tack weld on the cut piping with an arc welder, vapors from the Wet Oil Tank were ignited. The ignition

5

caused an explosion setting off a series of additional explosions in the three oil tanks on the platform. One of the Dry Oil Tanks and the Wet Oil Tank were blown into the Gulf of Mexico. The other dry oil tank was blown off its base and destroyed the platform crane. Approximately 480 barrels of oil and water were spilled into the Gulf of Mexico. Oil rained down on the lower deck of the platform where workers below the LACT unit had been performing other construction activity and fire broke out. As a result of the explosions, Avelino Tajonera, Elroy Corporal, and Jerome Malagapo died. Other workers were burned and injured.

### THE OFFENSE CONDUCT—WORKING WITHOUT WRITTEN AUTHORIZATION

On or about November 16, 2012, **BEE**, in connection with activities under the Outer Continental Shelf Lands Act and affecting natural resources belonging to, appertaining to, and under the exclusive management authority of the United States, on an oil production facility known as West Delta 32 erected on a federal mineral lease in an area in the Gulf of Mexico in the territorial jurisdiction of the Eastern District of Louisiana, through its agents acting within the scope of their agency and for the benefit of **BEE**, did knowingly and willfully fail to comply with regulations issued under the Outer Continental Shelf Lands Act designed to protect the health, safety, and the environment and conserve natural resources, by welding on the sump line piping without the PIC advising in writing that the area was safe for welding in violation of Title 30, Code of Federal Regulation, Section 250.113(c)(1)(i), all in violation of Title 43 United States Code, Section 1350(c)(1).

### Count 2—OCSLA- FAILURE TO INSPECT WORK AREA

A.    The allegations contained in Paragraphs 1-20 of Count 1 of this Bill of Information, as set forth above, are realleged and incorporated by reference as though set forth in their entirety herein.

B.  On or about November 16, 2012, **BEE**, in connection with activities under the Outer

6

Continental Shelf Lands Act and affecting natural resources belonging to, appertaining to, and under the exclusive management authority of the United States, on an oil production facility known as West Delta 32 erected on a federal mineral lease in an area in the Gulf of Mexico in the territorial jurisdiction of the Eastern District of Louisiana, through its agents acting within the scope of their agency and for the benefit of **BEE**, did knowingly and willfully fail to comply with regulations issued under the Outer Continental Shelf Lands Act designed to protect the health, safety, and the environment and conserve natural resources by welding on the sump line piping without the PIC having inspected the LACT unit area, including the sump line piping, and areas below it for potential fire hazards and explosion hazards in violation of Title 30, Code of Federal Regulation, Section 250.113(c)(1)(ii), all in violation of Title 43, United States Code, Section 1350(c)(1).

### Count 3—OCSLA-FAILURE TO DESIGNATE FIREWATCH

A. The allegations contained in Paragraphs 1-20 of Count 1 of this Bill of Information, as set forth above, are re-alleged and incorporated by reference as though set forth in their entirety herein.

B. On or about November 16, 2012, **BEE**, in connection with activities under the Outer Continental Shelf Lands Act and affecting natural resources belonging to, appertaining to, and under the exclusive management authority of the United States, on an oil production facility known as West Delta 32 erected on a federal mineral lease in an area in the Gulf of Mexico in the territorial jurisdiction of the Eastern District of Louisiana, through its agents acting within the scope of their agency and for the benefit of **BEE**, did knowingly and willfully fail to comply with regulations issued under the Outer Continental Shelf Lands Act designed to protect the health, safety, and the environment and conserve natural resources, by welding at the sump line

7

piping without the PIC having designated one or more persons as a fire watch with firefighting equipment and portable gas detecting equipment for the areas in which hot work was conducted in violation of Title 30, Code of Federal Regulation, Section 250.113(c)(2), all in violation of Title 43, United States Code, Section 1350(c)(1).

### Count 4—OCSLA- FAILURE TO MAKE PIPING SAFE

A.  The allegations contained in Paragraphs 1-20 of Count 1 of this Bill of Information, as set forth above, are re-alleged and incorporated by reference as though set forth in their entirety herein.

B.  On or about November 16, 2012, **BEE**, in connection with activities under the Outer Continental Shelf Lands Act and affecting natural resources belonging to, appertaining to, and under the exclusive management authority of the United States, on an oil production facility known as West Delta 32 erected on a federal mineral lease in an area in the Gulf of Mexico in the territorial jurisdiction of the Eastern District of Louisiana, through its agents acting within the scope of their agency and for the benefit of **BEE,** did knowingly and willfully fail to comply with regulations issued under the Outer Continental Shelf Lands Act designed to protect the health, safety, and the environment and conserve natural resources, by welding on sump line piping which had contained hydrocarbons and was connected to a tank containing hydrocarbons, without having rendered the piping inert, and without the PIC having determined that it was safe to weld in violation of Title 30, Code of Federal Regulation, Section 250.113(c)(3) all in violation of Title 43, United States Code, Section 1350(c)(1).

### Count 5—OCSLA--FAILURE TO PERFORM IN A SAFE AND WORKMANLIKE MANNER

A.  The allegations contained in Paragraphs 1-20 of Count 1 of this Bill of Information, as set forth above, are re-alleged and incorporated by reference as though set forth in their

entirety herein.

B.  From on or about November 10, 2012, through on or about November 16, 2012,

**BEE**, in connection with activities under the Outer Continental Shelf Lands Act and affecting

natural resources belonging to, appertaining to, and under the exclusive management authority of

the United States, on an oil production facility known as West Delta 32 erected on a federal

mineral lease in an area in the Gulf of Mexico in the territorial jurisdiction of the Eastern District

of Louisiana, through its agents acting within the scope of their agency and for the benefit of

**BEE,** did knowingly and willfully fail to comply with regulations issued under the Outer

Continental Shelf Lands Act that were designed to protect the health, safety, and the environment

and conserve natural resources, when the PIC, the Construction Superintendent, and

Construction Consultant failed to conduct operations in a safe and workmanlike manner, in

violation of Title 30, Code of Federal Regulation, 250.107(a), all in violation of Title 43, United

States Code, Section 1350(c).

### Count 6—CLEAN WATER ACT

A.  The allegations contained in Paragraphs 1-20 of Count 1 of this Bill of Information,

as set forth above, are realleged and incorporated by reference as though set forth in their entirety

herein.

B.  On or about November 16, 2012, in waters of the United States in connection with

activities under the Outer Continental Shelf Lands Act and affecting natural resources belonging

to, appertaining to, and under the exclusive management authority of the United States within the

200 mile contiguous zone from the coast of Louisiana all in the Eastern District of Louisiana, the

defendant, **BEE,** by and through its agents acting within the scope of their agency and for the

intended benefit of the defendant, did negligently discharge and cause to be negligently

discharged a harmful quantity of oil into the Gulf of Mexico from **BEE's** production facility at an area known as West Delta 32 when oil entered the Gulf of Mexico after an explosion causing a sheen on the water, all in violation of Title 33, United States Code, Sections 1319(c)(1)(A) and 1321(b)(3).

KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY

EMILY K. GREENFIELD
Assistant United States Attorney
LA. Bar Roll No. 28587

JOHN C. CRUDEN
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

KENNETH E. NELSON
Senior Trial Attorney

New Orleans, Louisiana
August 11, 2015

10

No. _____

# United States District Court

## FOR THE

EASTERN _____ DISTRICT OF _____ LOUISIANA

UNITED STATES OF AMERICA

*vs.*

BLACK ELK ENERGY OFFSHORE
OPERATIONS, LLC

## BILL OF INFORMATION
### FOR VIOLATIONS OF THE OUTER CONTINENTAL
### SHELF LANDS ACT AND CLEAN WATER ACT

Violation:   43 U.S.C. § 1350
33 U.S.C. § 1319 (c)(1)(A)
33 U.S.C. § 1321(b)(3)

*Filed* _____, 20 15

_____, *Clerk.*

*By* _____, *Deputy*

EMILY K. GREENFIELD
*Assistant United States Attorney*